HIGGINBOTHAM, J.
This appeal involves one of the many disputes related to the Bayou Come sinkhole that appeared in Assumption Parish in August 2012. The issues surrounding this particular appeal concern coverage provided by insurance policies that pre-date the occurrence of the sinkhole and whether the insurance companies involved have a duty to defend the main defendant, Texas Brine Company, LLC.
BACKGROUND
The plaintiffs in the underlying litigation, Pontchartrain Natural Gas System, K/D/S Promix, L.L.C., and Acadian Gas Pipeline (collectively referred to as "Pontchartrain"), are the owners and operators of natural gas pipelines and storage facilities in the vicinity of property where the Napoleonville Salt Dome is located. The defendant, Texas Brine Company, LLC ("Texas Brine"), operates brine production wells on the property above the salt dome. Pontchartrain filed suit against Texas Brine and its insurers, some of which are Zurich American Insurance Company, Steadfast Insurance Company, and American Guarantee and Liability Insurance Company (collectively referred to as "Zurich").
By means of three supplemental and amending petitions, Pontchartrain alleged that on August 3, 2012, a sinkhole was caused by the failure of a salt cavern connected with Texas Brine's brine production well known as Oxy Geismer # 3 Well ("OG3"), and that the sinkhole damaged Pontchartrain's pipelines and storage facilities. In each of the amended petitions, Pontchartrain asserted that Texas Brine's actions caused instability and subsidence underground that led to the sinkhole that caused physical damage to its pipelines and storage facilities. In response to Pontchartrain's lawsuit, Texas Brine filed third-party demands against many parties and other insurers not relevant to this appeal, and specifically sought defense and indemnity from Zurich pursuant to insurance policies issued to Texas Brine between March 2009 and March 2012, prior to the development of the sinkhole in August 2012. Zurich has provided a defense and indemnity to Texas Brine with respect to sinkhole claims under the policies that were in effect on the date of the sinkhole, *548 and those policies are no longer at issue because they have been exhausted. This particular appeal concerns the "pre-2012" policies issued by Zurich to Texas Brine.[1]
After much discovery, Zurich eventually filed motions for summary judgment against Pontchartrain and Texas Brine, claiming that Pontchartrain's claims for any potential pre-2012 damage and insurance coverage by Zurich should be dismissed with prejudice. Zurich maintained that Pontchartrain's claims for damages were connected only with the emergence of the sinkhole in August 2012, and that although Pontchartrain had attempted to make a "damage due to subsidence" argument, there simply was no proof, only speculation, concerning any pre-sinkhole damages. Zurich primarily relied on admissions made by Pontchartrain during the discovery process, that Pontchartrain had no evidence of pre-sinkhole damage, that Pontchartrain was unaware of any damage to its pipelines and storage facilities prior to the emergence of the sinkhole, and that Pontchartrain was not actually seeking any pre-sinkhole damages. Thus, Zurich argued that none of the pre-2012 policies were triggered since property damage did not occur during the effective dates of any of the pre-2012 policy periods and, therefore, they had no duty to indemnify or defend Texas Brine pursuant to the pre-2012 policies that had clearly expired five months before the sinkhole appeared.
Texas Brine opposed Zurich's motions for summary judgment, arguing that the motions were premature as discovery was still ongoing and that there was no conclusive evidence that Pontchartrain's damages did not occur prior to the emergence of the sinkhole. Texas Brine relied on experts' affidavits based on an expert's report suggesting that there was soil movement in the sinkhole area prior to the emergence of the sinkhole, and that movement could have damaged Pontchartrain's pipelines, thereby triggering the pre-2012 Zurich policies. Texas Brine also contended that it had ongoing third-party claims against Zurich that remained.[2] Pontchartrain did not substantively oppose Zurich's motions for summary judgment.[3] Zurich objected to Texas Brine's reliance on expert testimony by filing motions to strike the expert report and the expert's affidavits. Further, Zurich argued that because Pontchartrain undisputedly disavowed seeking damages for property damage that occurred prior to the development of the sinkhole in August 2012, any expert testimony speculating as to hidden pre-sinkhole damage was irrelevant, inadmissible, and did not identify any genuine issue of material fact.
On April 24, 2017, the district court heard Zurich's motions for summary judgment at the same hearing as many other motions and exceptions involving multiple parties and related district court numbers in this ongoing, complex litigation. Argument was heard regarding Zurich's pre-2012 insurance policies. Several other insurance companies of pipeline companies *549 with claims against Texas Brine were arguing the same motions in different district court numbers at the same hearing. Zurich objected on the record as to the admissibility of Texas Brine's expert report and affidavits. The district court took the matter under advisement, and on May 23, 2017, the court issued reasons for judgment, finding that the pre-2012 policies only covered property damage that occurred during the policy periods, not afterwards, and that Pontchartrain had not alleged any pre-sinkhole damage to their pipelines or storage facilities nor was Pontchartrain seeking pre-sinkhole damages.
A judgment was signed on September 13, 2017, reflecting the district court's findings, granting summary judgment in favor of Zurich as to Pontchartrain's claims only and dismissing Pontchartrain's direct action claims against Zurich with prejudice. Further, the district court specifically denied Zurich's motion for summary judgment against Texas Brine, finding that a genuine issue of material fact existed as to whether Zurich owed Texas Brine a duty to defend against the possible manifestation of pre-2012 damages on the remaining third-party demands. Texas Brine appealed the judgment insofar as it dismissed Pontchartrain's direct action claims against Zurich. Zurich filed a motion to dismiss and stay the appeal for lack of jurisdiction and, alternatively answered Texas Brine's appeal, seeking reversal of the part of the district court's ruling on Zurich's duty to defend Texas Brine since a judicial determination had been made that the pre-2012 policies did not provide any potential coverage for Pontchartrain's claims for indemnity under the policies.
APPELLATE JURISDICTION
The judgment at issue dismissed all of the direct action claims in Pontchartrain's principal demand against Zurich; however, it did not dismiss the third-party demands filed by Texas Brine against Zurich. Thus, Zurich moves this court to dismiss Texas Brine's appeal of what appears to be a partial final judgment that did not dispose of all claims against Zurich since Texas Brine's third-party demands against Zurich still remain. Since the judgment was not designated as final and appealable by the district court, Zurich argues there is no appealable judgment for this court to consider under its appellate jurisdiction.
Texas Brine opposes the motion to dismiss, asserting that the judgment is appealable under La. Code Civ. P. art. 1915(A)(1), because it dismisses all of Pontchartrain's direct action claims against Zurich. Texas Brine further argues that the judgment is appealable under La. Code Civ. P. art. 1915(A)(3), because the final judgment between Pontchartrain and Zurich affects Texas Brine's third-party demands against Zurich. Thus, Texas Brine maintains that certification of the judgment as final and appealable was not necessary.
After further review by this merits panel, we find that the judgment is final and appealable without the need for designation, pursuant to La. Code Civ. P. art. 1915(A)(3) and well-established jurisprudence. In Estate of Kirsh v. Blanchard, 2011-1835 (La. App. 1st Cir. 8/9/12), 2012 WL 3228973, *3 (unpublished opinion), writ denied, 2012-2502 (La. 1/18/13), 107 So.3d 632, this court discussed a similar judgment. In that case we noted that Article 1915(A)(3) provides that a final judgment may be rendered and signed by the district court when the court grants a motion for summary judgment as provided by Articles 966 through 969 of the Code of Civil Procedure, but not including a summary judgment granted pursuant to Article 966(E).
*550 Louisiana Code of Civil Procedure article 966(E) states in part that a "summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case." In this case, the summary judgment that was rendered does not qualify as an Article 966(E) judgment, because all of the principal demand claims of Pontchartrain against Zurich were dismissed with prejudice. Thus, we find that no Article 1915(B)(1) certification was required, and the summary judgment rendered in favor of Zurich is final and appealable under Article 1915(A)(3) and Article 1911(B), which provides that an appeal may be taken from a final judgment under Article 1915(A) without the judgment being so designated.
Further, while generally an appeal may not be taken from the denial of a motion for summary judgment pursuant to La. Code Civ. P. art. 968, when there is an appeal from a final judgment, i.e. , a district court's grant of summary judgment, an interlocutory ruling may also be reviewed by the appellate court. See Lambert Gravel Co., Inc. v. Parish of West Feliciana, 2015-1225 (La. App. 1st Cir. 9/20/16), 234 So.3d 889, 895-896. Therefore, we will consider whether the district court erroneously denied Zurich's motion for summary judgment on the duty to defend issue. Consequently, we deny Zurich's motion to dismiss as well as the motion to stay the appeal. We now consider the merits of Texas Brine's appeal and Zurich's answer to the appeal.
SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Crosstex Energy Services, LP v. Texas Brine Company, LLC, 2017-0895 (La. App. 1st Cir. 12/21/17), 240 So.3d 932, 935, writ denied, 2018-0145 (La. 3/23/18), 238 So.3d 963 (hereafter referred to as " Crosstex I "). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. Code Civ. P. art. 966(A)(4).
The burden of proof on a motion for summary judgments rests on the mover. But if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Instead, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to then produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1).
Appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Crosstex I, 240 So.3d at 936. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Id. Because it is the applicable substantive law that determines materiality, whether a *551 particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Id. Whether an insurance policy provides or precludes coverage is a dispute that can be properly resolved within the framework of a motion for summary judgment. Id.
LAW AND ANALYSIS
It is undisputed that Zurich provided pre-sinkhole insurance policies to Texas Brine under three annual pre-2012 policy periods effective from March 1, 2009, through March 1, 2012. In support of its motions for summary judgment, Zurich filed an affidavit of a Zurich Claim Specialist, referencing and attaching pertinent excerpts from the three pre-2012 Zurich policies at issue. Generally, the pre-2012 Zurich policies provide coverage only for damages because of "property damage" that occurs during the policy period , as follows, with emphasis added:
SECTION I - COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damaged because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply ....
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
(2) The "bodily injury" or "property damage" occurs during the policy period ; ...
c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured ...
d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured ...
(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.
* * *
Further, the pre-2012 Zurich policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Additionally, "property damage" is defined as:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
* * *
The Zurich pre-2012 policies clearly and unambiguously provided coverage for property damage only if it occurred during the policy period. It is undisputed that no *552 pre-2012 policy was in effect on the date that the sinkhole appeared, August 3, 2012. However, Texas Brine argues that while Pontchartrain may have discovered its pipeline damage on August 3, 2012, there are genuine issues of material fact as to whether hidden damage occurred before then, due to the subsidence and other non-visible underground damage in the years before the sinkhole became visible. According to Texas Brine, the mere possibility that Pontchartrain could have sustained damage during the pre-2012 Zurich policy periods precludes summary judgment on Zurich's motions for summary judgment, including on the issue of Zurich's duty to defend Texas Brine's third-party demands. To support its opposition, Texas Brine relied upon three expert opinions.
This is not the first time that Texas Brine has made these arguments. In the Crosstex I case referenced earlier and in a related case, Crosstex Energy Services, LP v. Texas Brine Company, LLC, 2017-0863 (La. App. 1st Cir. 12/21/17), 240 So.3d 1024, writ denied, 2018-0144 (La. 3/23/18), 238 So.3d 962 ("Crosstex II "), Texas Brine made the same arguments involving the same Zurich pre-2012 policies in Crosstex I and AIG Insurers' pre-2012 policies[4] in Crosstex II, and referencing the same expert report and experts' affidavits. The only difference was that the main plaintiff in the underlying litigation in those cases was EnLink f/k/a Crosstex Energy Services, another natural gas pipeline company whose pipeline traversed the edge of the salt dome.[5] In both Crosstex I and Crosstex II, as well as the case sub judice, Texas Brine argues that the pre-2012 policies do not limit coverage to property damage that manifests itself during the policy period, but should be interpreted to cover possible hidden damage to the pipelines that may have resulted from earth movement that may have occurred during the pre-2012 policy periods. In Crosstex I , this court stated:
To support its opposition to the summary judgment, Texas Brine filed three expert opinions. The first expert, William Barnhart, opined that [in SAR] analysis, a technique used to observe active ground surface deformation, was consistent with ground surface subsidence near the salt dome from 2007 through 2011. The second expert, John Carico, opined that pre-2012 earth movement in the Bayou Come area "could have" damaged EnLink's pipeline earlier than March 1, 2012. The third expert, Peter Knowe, opined that, "if" pre-2012 earth movement damaged EnLink's pipeline, such hidden damage would be covered under pre-2012 occurrence policies, even if the sinkhole did not appear until 2012.
We first note that, under the "eight-comers rule,"[6] Texas Brine's experts' opinions are irrelevant to determining Zurich's duty to defend Texas Brine against EnLink's claims. It is EnLink's *553 allegations that determine Zurich's duty to defend, and Texas Brine cannot use expert opinions to add to EnLink's allegations, or to dictate a certain interpretation of EnLink's allegations, in its attempt to defeat summary judgment on the duty to defend issue. Further, even if we did consider the expert opinions, they do not create a factual dispute as to whether EnLink sustained property damage during any of the specific, relevant policy periods, but only speculation that such could have occurred before March 1, 2012.
Crosstex I, 240 So.3d at 937-38 (citations omitted and footnote added). See also Crosstex II, 240 So.3d at 1030.
This court went on to review the plaintiffs' petitions in Crosstex I and Crosstex II to determine if there were any allegations of property damage occurring during any of the pre-2012 policy periods. This court found that the petitions in Crosstex I, 240 So.3d at 938-39, and Crosstex II, 240 So.3d at 1031-32, did not bring the plaintiffs' claims within the scope of the insurers' duty to defend Texas Brine, finding no allegations of hidden damage to the plaintiffs' pipelines due to subsidence or other non-visible underground damage at any time before the sinkhole became visible on August 3, 2012. In other words, the insurers' duty to defend was never triggered, because the plaintiffs had not alleged that property damage occurred during a relevant policy period.
Similarly, after a thorough de novo review of the record in this appeal, we find that Zurich met its initial burden of pointing to an absence of factual support for an element essential to Texas Brine's indemnity claims under Zurich's pre-2012 policies. Pontchartrain's allegations and admissions made during discovery make it clear that Pontchartrain was not ever seeking pre-sinkhole damages, because it was not aware of any damage to its pipelines and storage facilities prior to the emergence of the sinkhole. Therefore, none of Zurich's pre-2012 policies were triggered since the alleged property damage did not occur during the effective dates of the pre-2012 policy periods. Once Zurich demonstrated this lack of evidence, the burden shifted to Texas Brine to specifically show evidence that Pontchartrain had alleged/admitted any property damage that occurred during a relevant policy period. See La. Code Civ. P. arts. 966(D)(1) and 967(B). Since Texas Brine merely relied on speculative expert opinions extraneous to Pontchartrain's allegations and admissions, there is no genuine issue of material fact, and Zurich is entitled to summary judgment against Pontchartrain as a matter of law. See Crosstex I, 240 So.3d at 937-38 ; Crosstex II, 240 So.3d at 1032.
Accordingly, we find that the district court properly granted summary judgment in favor of Zurich, dismissing the direct action claims of Pontchartrain with prejudice. Further, for the same reasons set out in Crosstex I and Crosstex II , we find that Pontchartrain's allegations and admissions do not bring its claims within the scope of Zurich's duty to defend Texas Brine in this case. Zurich's duty to defend Texas Brine pursuant to the pre-2012 policies has not been triggered since there are no allegations by Pontchartrain, and Pontchartrain admits, that no property damage to its pipelines occurred during a relevant policy period. Thus, the district court erred in denying Zurich's motion for summary judgment against Texas Brine on the duty to defend issue.
In this case, we emphasize that because it has been judicially determined that there is no pre-2012 coverage for indemnity under the Zurich policies, there is no duty to defend. The facts presented do not *554 create a situation that would trigger coverage for indemnity under the pre-2012 Zurich policies. Therefore, we find that Zurich's defense obligations toward Texas Brine terminated once it was established that Pontchartrain's claims were not within the scope of the pre-2012 policies. See Maldonado, 146 So.3d at 219 ("When uncontroverted facts preclude the possibility of a duty to indemnify, the duty to defend ceases and the duty to defend is negated.") See also Allstate Ins. Co. v. Roy, 94-1072 (La. App. 1st Cir. 4/7/95), 653 So.2d 1327, 1333, writs denied, 95-1121, 95-1215 (La. 6/16/95), 655 So.2d 339 ("While the duty to defend may exist in circumstances where it is apparent that there is no coverage, it is predicated on some possibility that the allegations, when supported by competent evidence , can be proven." (Emphasis added.) ) In this case, the undisputed facts show that Pontchartrain's claims do not create a situation that would trigger pre-2012 indemnity coverage. Accordingly, we reverse the denial of Zurich's motion for summary judgment that was rendered in favor of Texas Brine, and hereby grant summary judgment in Zurich's favor and dismiss Texas Brine's third-party claims against Zurich in this matter.
CONCLUSION
For the stated reasons, the judgment of the district court is affirmed in part, reversed in part, and rendered as follows. We affirm the district court's grant of summary judgment in favor of Zurich and against Pontchartrain, dismissing all of Pontchartrain's indemnity claims against Zurich. We reverse the district court's denial of Zurich's motion for summary judgment against Texas Brine on the duty to defend issue. Once it was judicially determined that Zurich had no coverage for indemnity under its pre-2012 policies, Zurich's defense obligations ended. Therefore, summary judgment is hereby granted in favor of Zurich[7] against both Pontchartrain[8] and Texas Brine,[9] dismissing all of Pontchartrain's and Texas Brine's claims against Zurich with prejudice. All costs of this appeal are assessed against Texas Brine.
MOTIONS TO DISMISS AND STAY DENIED; AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.

Although the last of the pre-2012 Zurich policies expired on March 1, 2012, for consistency with the references made by the parties, we refer to the policies at issue as "pre-2012."

Texas Brine asserted other direct action claims against certain alleged insurers of an oil and gas defendant, Adams Resources, including a pre-sinkhole policy issued by a Zurich-affiliated company.

Pontchartrain opposed the motions on a technical procedural timing issue due to Zurich seeking summary judgment for claims asserted in a proposed third supplemental and amended petition that Pontchartrain had not yet been granted leave to file. However, the third amended petition was considered by the district court and eventually filed, leaving no substantive opposition by Pontchartrain.

The insurers involved in Crosstex II were National Union Fire Insurance Company of Pittsburgh, Pa. and AIG Specialty f/k/a AISLIC.

In Crosstex I and Crosstex II , the original petitions were filed by Crosstex Energy Services, LP; Crosstex LIG, LLC; and Crosstex Processing Services, LLC (all referred to as "Crosstex"). The plaintiffs' names were later changed, respectively, to EnLink Midstream Operating, LP; EnLink LIG, LLC; and EnLink Processing Services, LLC. See Crosstex I, 240 So.3d at 934, n.1. See also Crosstex II, 240 So.3d at 1026, n.1.

The "eight-corners rule" refers to looking to the four comers of the plaintiff's petition and the four comers of the insurer's policy to determine whether a duty to defend a civil action against an insured is required. See Maldonado v. Kiewit Louisiana Co. , 2013-0756 (La. App. 1st Cir. 3/24/14), 146 So.3d 210, 218.

"Zurich" refers to Zurich American Insurance Company, Steadfast Insurance Company, and American Guarantee and Liability Insurance Company collectively.

"Pontchartrain" refers to Pontchartrain Natural Gas System, K/D/S Promix, L.L.C., and Acadian Gas Pipeline collectively.

"Texas Brine" refers to "Texas Brine Company, LLC".