NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1566
and 2019 CW 0273

NORMAN McQUIRTER, BRANNON MASTOS, AND JEROME TUBBS

VERSUS

STATE OF LOUISIANA THROUGH THE LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS ELAYN HUNT CORRECTIONAL
CENTER, MASTER SERGEANT JIMMIE HOLLOWAY, LOUISIANA STATE
PENITENTIARY, AND OFFICE OF RISK MANAGEMENT

Judgment Rendered:   SEP 1 8 2020

Appealed from the
Eighteenth Judicial District Court
In and for the Parish of Iberville
State of Louisiana
Docket Number 76582 c/w 76811 c/w 76998

Honorable Elizabeth A. Engolio, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Donna U. Grodner<br>Baton Rouge, LA | Counsel for Plaintiffs/Appellants,<br>Norman McQuirter, Brannon Mastos,<br>and Jerome Tubbs |
| Jeff Landry, Attorney General<br>Kyle C. Matthias, Assistant<br>  Attorney General<br>Amber Mandina Babin<br>Baton Rouge, LA | Counsel for Defendants/Appellees,<br>the State of Louisiana through the<br>Department of Public Safety and<br>Corrections, Elayn Hunt Correctional<br>Center, and Master Sergeant Jimmie<br>Holloway |

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE:  WHIPPLE, C.J., GUIDRY, AND WOLFE, JJ.

**WHIPPLE, C.J.**

In this personal injury case arising from a vehicular accident, plaintiffs appeal the trial court's January 7, 2019 judgment, which granted in part the motion for summary judgment filed by the State of Louisiana through the Department of Public Safety and Corrections Elayn Hunt Correctional Center ("the DPSC") and dismissed the DPSC with prejudice. For the following reasons, we reverse in part and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

In August 2016, the State of Louisiana was greatly impacted by flooding rains (hereinafter referred to "the August 2016 flood"), which prompted Governor John Bel Edwards to declare a statewide state of emergency through Gubernatorial Proclamation No. 111 JBE 2016. See LSA-R.S. 29:724(B)(1). On August 18, 2016, in efforts to combat flooding in Iberville Parish from Bayou Manchac overflowing its banks, Master Sergeant Jimmie Holloway, an employee of Elayn Hunt Correctional Center, was directed to supervise a group of inmates who had been tasked with assisting in sandbagging efforts along Bayou Manchac Road. These sandbagging efforts continued into the early morning hours of August 19, 2016.

In carrying out the sandbagging project, the inmates loaded sandbags into a state-owned Dodge four-door, extended-cab pick-up truck driven by Holloway. Once the bed of the truck was loaded with sandbags, Holloway transported the inmates and the sandbags to various spots along Bayou Manchac Road where the inmates would then stack the sandbags along the roadside.

In the early morning hours of August 19, 2016, Holloway was transporting inmates Norman McQuirter, Brannon Mastos, and Jerome Tubbs with a load of sandbags along Bayou Manchac Road in dark, rainy conditions, when he hit a large hole filled with water that had apparently developed in the roadway around the

2

time of the flooding, causing the vehicle to tilt onto its side and to take on some water, allegedly causing injury to McQuirter, Mastos, and Tubbs.

McQuirter, Mastos, and Tubbs each individually filed suit for personal injuries, naming as defendants Holloway and the DPSC, which actions were later consolidated by the trial court.[1] Holloway and the DPSC answered and raised the defense of immunity pursuant to LSA-R.S. 29:735. Holloway and the DPSC thereafter filed a motion for summary judgment, seeking dismissal of plaintiffs' claims against them on the basis of statutory immunity.

Following a hearing on the motion, the trial court signed a judgment dated January 7, 2019, denying defendants' motion for summary judgment as to plaintiffs' claims against Holloway but granting the motion as to plaintiffs' claims against the DPSC and dismissing those claims against the DPSC with prejudice. From this judgment, plaintiffs appeal, challenging the trial court's partial grant of summary judgment and dismissal of their claims against the DPSC. Holloway and the DPSC also filed an application for supervisory writs, bearing docket number 2019 CW 0273, challenging the portion of the trial court's January 7, 2019 judgment denying their motion for summary judgment as to plaintiffs' claims against Holloway. By order dated May 20, 2019, the writ application was referred to the panel to which this appeal was assigned.

## SUMMARY JUDGMENT PRECEPTS

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jones v. Anderson, 2016-1361 (La. App. 1st Cir. 6/29/17), 224 So. 3d 413, 417. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the

---

[1] Although the Louisiana State Penitentiary and the Office of Risk Management are listed as defendants in the caption of this matter, it is unclear from the record who named these entities as defendants and whether those claims are still pending. While the original petitions filed by McQuirter and Mastos were made a part of this record, the petition filed by Tubbs was not. The record does contain, however, the trial court's orders of consolidation, consolidating all of these matters.

3

motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.[2] LSA-C.C.P. art. 966(A)(4).

The burden of proof rests with the mover. LSA-C.C.P. art. 966(D)(1). When the mover will bear the burden of proof at trial, the mover has the burden of showing that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Only when the mover makes this showing does the burden shift to the opposing party to present evidence demonstrating a material factual issue remains. Action Oilfield Services, Inc. v. Energy Management Company, 2018-1146 (La. App. 1st Cir. 4/17/19), 276 So. 3d 538, 541-542. If, however, the mover does not resolve all material issues of fact, the burden never shifts to the opposing party. In that situation, the opposing party has nothing to prove in response to the motion for summary judgment, and summary judgment should be denied. See Hat's Equipment, Inc. WHM, L.L.C., 2011-1982 (La. App. 1st Cir. 5/4/12), 92 So. 3d 1072, 1076.

Appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Crosstex Energy Services, LP v. Texas Brine Company, LLC, 2017-0895 (La. App. 1st Cir. 12/21/17), 240 So. 3d 932, 936, writ denied, 2018-0145 (La. 3/23/18), 238 So. 3d 963. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Crosstex Energy Services, LP, 240 So. 3d at 936. Because it is the applicable substantive law that determines materiality,

---

[2]Nevertheless, the court shall consider any documents filed in support of or in opposition to the motion for summary judgment to which no objection is made. LSA-C.C.P. art. 966(D)(2).

whether a particular issue in dispute is material can be seen only in light of the substantive law applicable to the case. Jones, 224 So. 3d at 417.

## DISCUSSION

The Louisiana Legislature enacted the Louisiana Homeland Security and Emergency Assistance and Disaster Act ("the Act"), LSA-R.S. 29:721 et seq., due to the existing possibility of the occurrence of emergencies and disasters resulting from natural or manmade causes. LSA-R.S. 29:722(A); Lyons v. Terrebonne Parish Consolidated Government, 2010-2258 (La. App. 1st Cir. 6/10/11), 68 So. 3d 1180, 1183. Pursuant to the Act, a "disaster" is defined in LSA-R.S. 29:723(2) as:

> [T]he result of a natural or man-made event which causes loss of life, injury, and property damage, including but not limited to natural disasters such as hurricane, tornado, storm, flood, high winds, and other weather related events, forest and marsh fires, and man-made disasters, including but not limited to nuclear power plant incidents, hazardous materials incidents, oil spills, explosion, civil disturbances, public calamity, acts of terrorism, hostile military action, and other events related thereto.

With regard to immunity of the State or its political subdivisions and agencies, or the employees or representatives thereof under the Act, LSA-R.S. 29:735(A)(1), prior to amendment by 2020 La. Acts, No. 362, §1 (effective June 12, 2020), stated, in pertinent part:

> Neither the state nor any political subdivision thereof, nor other agencies, nor, except in case of willful misconduct, the agents' employees or representatives of any of them engaged in any homeland security and emergency preparedness and recovery activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons or damage to property as a result of such activity.

The Act defines "emergency preparedness" as "the mitigation of, preparation for, response to, and the recovery from emergencies or disasters" and further provides that "[t]he term 'emergency preparedness' shall be synonymous with 'civil defense', 'emergency management', and other related programs of similar name." LSA-R.S. 29:723(4).

5

Thus, the State, its agencies, and political subdivisions are afforded complete immunity for injury or death resulting from emergency preparedness activities. Noyel v. City of St. Gabriel, 2015-1890 (La. App. 1st Cir. 9/1/16), 202 So. 3d 1139, 1144-1145, writ denied, 2016-1745 (La. 11/29/16), 213 So. 3d 392; see also Lyons, 68 So. 3d at 1184. Additionally, agents, representatives, or employees of the State, its political subdivisions, or agencies are also completely immune except where they have engaged in willful misconduct in the course of preparing for or responding to a disaster or emergency. Noyel, 202 So. 3d at 1145; Koonce v. St. Paul Fire & Marine, 2015-31 (La. App. 3rd Cir. 8/5/15), 172 So. 3d 1101, 1104, writ denied, 2015-1950 (La. 11/30/15), 184 So. 3d 36. "Willful misconduct" pursuant to LSA-R.S. 29:735 is some voluntary, intentional breach of duty—which may be unlawful, dishonest, and/or improper—that is committed with bad intent or, at best, with wanton disregard for the consequences. Noyel, 202 So. 3d at 1145; see Koonce, 172 So. 3d at 1105, 1107.

On appeal, plaintiffs challenge the portion of the trial court's January 7, 2019 judgment dismissing their claims against the DPSC on the basis of immunity under the Act. As with all affirmative defenses, the party pleading immunity under the Act bears the burden of proof. See Colson v. Colfax Treating Co., LLC, 2017-913, 2017-912 (La. App. 3rd Cir. 4/18/18), 246 So. 3d 15, 20. Accordingly, on summary judgment, the DPSC had the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law dismissing plaintiffs' claims against it on the basis of immunity.

There is no dispute that, at the time of the accident, the State of Louisiana was in a declared state of emergency. Due to expected heavy rainfall accumulations and the resulting threat to lives and property of the citizens of Louisiana resulting from the August 2016 Flood, Governor John Bel Edwards, by

6

Gubernatorial Proclamation No. 111 JBE 2016, declared a state of emergency for the State of Louisiana, effective August 12, 2016 until September 10, 2016.[3]

Additionally, the evidence submitted by defendants in support of their motion for summary judgment clearly establishes that the DPSC was engaged in emergency preparedness or emergency management activities at the time of the accident. In an attempt to stem the flow of water from Bayou Manchac into Iberville Parish, the DPSC was engaged in efforts to sandbag along Bayou Manchac Road. Sandbagging during a flooding event clearly qualified as a "response to" the state of emergency unfolding at the time of the accident herein. For these reasons, the trial court granted summary judgment in part, finding that the DPSC was immune from liability.

Nonetheless, on appeal, plaintiffs contend that the trial court erred in ending its analysis of the DPSC's entitlement to immunity under the Act at that point without consideration of the DPSC's vicarious liability under the doctrine of *respondeat superior* for the alleged willful misconduct of its employee Holloway. Plaintiffs argue that a plain reading of LSA-R.S. 29:735(A)(1) specifically demonstrates that the State or its agencies will be held liable for the willful misconduct of its employees. Plaintiffs note that in Noyel, the political subdivision and its agency alone, and not the agency's employees, were named as defendants. Nonetheless, in determining whether the **political subdivision** and its agency were immune from liability under LSA-R.S. 29:735(A)(1), this court focused on the nature of the conduct by the employees (e.g., whether there was "willful misconduct") as follows:

> Thus, the question we must first address is whether Officers Lee and Jones—employees of a political subdivision of the State—were engaged in "homeland security and emergency preparedness activities" at the time of Noyel's accident. Then, if we find that Officers Lee and Jones were engaged in "homeland security and

---

[3]The trial court took judicial notice of this Proclamation. See LSA-C.E. art. 202(B)(1)(a).

7

emergency preparedness activities," we must determine whether the officers' action ... constituted willful misconduct pursuant to La-R.S. 29:735.

Noyel, 202 So. 2d at 1145. Having found that the officers did not engage in willful misconduct, this court concluded that the trial court had properly granted summary judgment dismissing the claims against the political subdivision and its agency. Noyel, 202 So. 2d at 1146-1147. See also Cooley v. Acadian Ambulance, 2010-1229 (La. App. 4th Cir. 5/4/11), 65 So. 3d 192, 198, 200 (where plaintiffs sued parish government, but not parish officials, court nonetheless analyzed whether parish officials had engaged in willful misconduct in determining the parish government's entitlement to immunity under the Act).[4]

Thus, plaintiffs assert, if the immunity granted to the State, its political subdivisions, and other agencies also extended to their vicarious liability under the theory of *respondeat superior* for an employee's willful misconduct, there would have been no reason for this court to conduct an inquiry into the employee's alleged willful misconduct in determining whether the political subdivision and its agency were immune from liability in Noyel. We agree.

This court has held that the State is vicariously liable for the acts of its employee where the tortious acts are primarily employment rooted and reasonably incidental to the performance of the employee's duties, even where those acts constitute intentional torts. See Latullas v. State, 94-2049 (La. App. 1st Cir. 6/23/95), 658 So. 2d 800, 803-805. To interpret the immunity granted under the Act to the State, its political subdivisions, and other agencies as abolishing

---

[4]But see Robertson v. St. John the Baptist Parish, 15-240 (La. App. 5th Cir. 10/14/15), 177 So. 3d 785, 789 & n.3 (where plaintiffs sued parish for flooding in the wake of a hurricane, court concluded that plaintiffs could not state a cause of action against the parish, specifically noting that while the Act contains an exception to immunity for willful misconduct, the exception did not apply to the parish, but only to the employees or representatives of the parish), and Castille v. Lafayette City-Parish Consolidated Government, 04-1569 (La. App. 3rd Cir. 3/2/05), 896 So. 2d 1261, 1264-1265, writ denied, 2005-0860 (La. 5/13/05), 902 So. 2d 1029 (where plaintiffs sued only the city itself and did not join any individual city employees, court found the city was immune without considering the alleged willful misconduct of city employees).

8

vicarious liability for the willful misconduct of the employees thereof would subject employees to greater exposure and individual liability during a time of a state of emergency than the State itself would face for services at a time when such emergency preparedness activities may involve working through extended or unusual hours under more exigent and perilous conditions than during times of non-emergency. We find such an interpretation untenable and unsupported by the language of the Act. Accordingly, following the analysis utilized by this court in Noyel, we must determine whether the DPSC met its burden of showing that there is no genuine issue of material fact that Holloway was not engaged in willful misconduct at the time of the accident at issue. See Noyel, 202 So. 3d at 1145-1147.

The evidence submitted in opposition to defendants' motion for summary judgment demonstrates the existence of disputed facts regarding Holloway's conduct. Specifically, in sworn testimony submitted in opposition to the motion, plaintiffs all testified that they warned Holloway that the truck was overloaded with sandbags, but he drove off anyway. According to Tubbs and McQuirter, the weight of the sandbags seemed to make it difficult to drive, and Holloway struggled to maintain control of the vehicle. Holloway disputed plaintiffs' testimony as to how high the bed of the truck was loaded with sandbags and denied that he had difficulty with the truck being loaded too heavily with sandbags. Additionally, while Holloway denied wearing sunglasses while driving that night, Mastos and Tubbs testified that Holloway was in fact wearing sunglasses on the night of the accident. Also, while Holloway denied using his cellphone during that night, this testimony was also disputed by plaintiffs and by phone records offered in opposition to the motion.

Given these disputed facts and the parties' conflicting accounts of the accident and Holloway's conduct, which would require credibility determinations

9

to resolve, we conclude that genuine issues of material fact remain as to whether Holloway's actions constituted willful misconduct. Accordingly, the DPSC did not demonstrate its entitlement to judgment in its favor as a matter of law.

Turning to defendants' writ application challenging that portion of the trial court's January 7, 2019 judgment denying in part their motion for summary judgment as to plaintiffs' claims against Holloway, for the same reasons that we conclude the trial court erred in granting in part the motion for summary judgment and dismissing plaintiffs' claims against the DPSC, we find no error in the trial court's ruling, denying summary judgment as to these claims. The record reflects that genuine issues of material fact remain as to whether Holloway is entitled to immunity under the Act. Accordingly, defendants' writ application is denied.

## CONCLUSION

For the above and foregoing reasons, the portion of the trial court's January 7, 2019 judgment granting in part the motion for summary judgment filed by the State of Louisiana through the Department of Public Safety and Corrections Elayn Hunt Correctional Center is reversed. The defendants' application for supervisory writs in number 2019 CW 0273 is denied. This matter is remanded to the trial court for further proceedings consistent with the views expressed herein.

Costs of this appeal in the amount of $2,650.00 are assessed against the State of Louisiana through the Louisiana Department of Public Safety and Corrections.

**REVERSED; WRIT DENIED; REMANDED.**