197 So. 612

**TATE v. LUDEAU et al.**

**No. 35669.**

June 28, 1940.

Rehearing Denied July 18, 1940.

O. E. Guillory, and E. H. Guillory, both of Ville Platte, and W. C. Perrault and Francis R. Edwards, both of Opelousas, for plaintiff-appellant.

Atlee P. Steckler and Roland B. Reed, both of Ville Platte, for defendants-appellees.

ROGERS, Justice.

The plaintiff, Albert Tate, appeals from a judgment rejecting his demand for the rescission of a certain mineral lease and for attorney's fees for prosecuting the suit.

It appears to have been established to the satisfaction of the trial judge that the demand of Emile Ludeau and W. A. Jacobson, defendants, for a reformation of the lease-contract was well-founded. The determination of this issue necessarily involves questions of fact; hence, the nature and character of the evidence is the principal matter of inquiry on this appeal.

On December 5, 1935, Albert Tate executed an option agreement, wherein he obligated himself to grant to Emile Ludeau, or any other person designated by him, a mineral lease on 1,356.90 acres of land described in the lease. The consideration of the contemplated lease was fixed at $2.50 per acre for the first year and fifty cents per acre for every six months thereafter. The option agreement stipulated that the lease was to be executed on Bath's Form 12A, Louisiana Oil, Gas and Mineral Lease Form. On March 9, 1936, the option was extended by Albert Tate to April 1, 1936. On March 25, 1936, the Continental Oil Company leased a portion of the land embraced by the option. This lease was executed on Form 10 Special. On March 27, 1936, the remainder of the property embraced by the option was leased to Emile Ludeau and W. A. Jacobson. This lease was executed on Bath's Form 12 instead of on Bath's Form 12A as specifically designated in the option agreement which, defendants contend, manifested the true intention of the parties.

The plaintiff received $3,392.25 at the execution of the lease which, according to the option agreement, was the payment in advance of rental for one year instead of six months as provided for in the form of lease actually used.

The trial judge assigns the following reasons for holding that mutual error and mistake entered into the execution of the contract of lease, viz.:

"There are no substantial reasons disclosed by the record which can or do convince us that any contract other than that

contemplated by the option agreement executed on December 5th, 1935, and whose expiration date, March 9th, 1936, was extended by mutual consent to April 1st, 1936 (exhibits D–2, D–3), was actually entered into and executed on March 27th, 1936 (exhibit D–1). The evidence clearly preponderates in favor of the view and leads to the conclusion that no event or circumstance intervened and no discussion or conversation between the parties arose between the date of the execution of the option agreement and the execution of the lease from which we can reasonably infer a change of minds in one or the other party, or an intention to change and modify the lease contemplated by the option agreement referred to. The record is also singularly bare of any reason or motive on the part of the lessees to depart from the clear covenants contained in the option agreement, and in the absence of any reason or motive, as well as the absence of any fact or circumstance which might evince a change of intention, we must hold that the original intention subsisted and actually entered into the confection of the lease executed on March 27th, 1936 (exhibit D–1), to the same extent and with the same effect as if Bath's Form 12–A, the form stipulated in the option agreement as the one to be used for the lease agreement, had been used for the incorporation of the covenants contained in said former agreement. Nothing substantial appearing to show a change in the original intention, either by oral or written word, either by antecedent or contemporaneous event or circumstances, we are constrained to hold that the record as presented is indicative of a sus-

tained rather than a vacillating or changed intention.

"That there was error in the preparation and execution of the lease of date March 27th, 1936, by and through the innocent substitution of Bath's Form 12 in lieu of Form 12–A, the one stipulated in the option agreement as that to be employed for the execution of the lease, appears to be well established by the testimony of Mr. Heck (notary), who prepared both the option and the lease agreements, of Mr. Jacobson and Mr. Ludeau, defendants in this suit. We say it appears well established because the explanation assigned by these witnesses for the erroneous substitution of forms is not a weird or farfetched one, but one reasonable and understandable in the light of the circumstances shown to have existed at the time of the execution of the lease, especially when considered with the absence of anything indicating a change in the original intention of the parties, as shown hereinbefore.

"And the record further sustains the view, and to this view we subscribe, that the error concerning which complaint is made and whose existence is clearly established, was mutual. On the part of the defendants, it is patent from what has already been said that error existed; on the part of the plaintiff, contemporaneous and subsequent events and conduct show that he also labored thereunder at the time of the execution of the lease.

"For, there being at the time an option agreement which had not in any manner been changed, abrogated or substituted, it passes ordinary credulity to believe that,

being suddenly confronted with an agreement glaringly unlike the one which plaintiff should have expected to be presented, he would express no surprise and show no inclination to call to the attention of the defendants the material changes in the instrument presented to him, unless we are to conclude, and we do not, that the agreement exhibited features so favorable to him that he considered silence the better policy. When we say that plaintiff said or did nothing under the circumstances just related, we are not unmindful of the fact that plaintiff testified that he noticed the material changes in the lease presented to him for execution and that he had said that 'they (meaning Jacobson and Ludeau) said that was what they wanted, that is what I signed' (transcript p. 68), but nowhere in the record, in the testimony of Heck, the notary, or Ludeau, or Jacobson, or anyone else who might have been present at or near the time of the execution of the lease, do we find that plaintiff had been informed of any desired change in the contemplated lease or that any one has said that 'That was what they (Ludeau and Jacobson) wanted,' or that he had signed the proffered instrument while laboring under the delusion that a new agreement was desired by defendants. In fact, it is difficult from a careful reading of the record to ascertain who was or were actually present at one time at or near the time of the execution of the lease, but the record clearly shows that no conversation at or near the time of execution took place between plaintiff and either one of defendants.

"In the option agreement the initial payment of $2.50 an acre was to be considered the first year's rental while in the lease executed on Form 12 the first rental was to become due in six months. Subsequent to the execution and for a long period thereafter, plaintiff did not rely on the failure of defendants to pay the stipulated rental within six months as a cause for the cancellation of the lease, but relied as a cause therefor, not on the belated attempt of defendants to pay the rental at the end of one year, as had been stipulated in the option agreement but on their failure to pay the rental on all the lands leased, contending that the last stipulation in Clause 4, allowing the surrender of any acreage desired, had been cancelled or stricken out, or at any rate, that all parties had agreed that no such surrender of acreage would be allowed."

The trial judge was confronted with the unusual circumstance that the original lease sued upon differed materially from the instrument as recorded in Mineral Lease Book 14, at page 123. Both lease forms 12 and 12–A contained the following clause:

"Lessee may at any time execute and deliver to lessor or to the depository above named or place of record a release or releases covering any portion or portions of the above described premises and thereby surrender this lease as to such portion or portions and to be relieved of all obligations as to the acreage surrendered."

This clause was stricken out in the original lease, but appears intact in the lease as placed of record in the clerk's office. The defendants called as a witness G. H. Vidrine, who recorded the instrument in

the Mineral Lease Book. He stated unequivocally that at that time there were no alterations in the original lease. J. D. Heck, the notary public, testified that the alteration was not made by him at the time the lease was executed. The testimony of these witnesses is corroborated by that of the defendants Ludeau and Jacobson. The trial judge disposes of this phase of the controversy as follows:

"We need not decide just how, when, why and by whom the last portion of Clause 4 was stricken out. The record is clear that at the time of the execution of the lease this portion of the clause was intact and formed a part of the executed lease; the record is equally clear that by and through some source and some means this portion of the clause was cancelled and stricken out on the original instrument, but not on the recorded copy, after its execution and its deposit into the public records of the Recorder of the Parish of Evangeline. We must and do hold, therefore, that the whole of Clause 4, including that portion which it was attempted to cancel and strike out, forms an essential part of the lease agreement, to the same extent as if Form 12–A had been used, in which also appears an identical provision or stipulation."

The trial judge, who heard and saw the witnesses, concluded that the testimony preponderated in favor of the defendants. Our examination of the record has not disclosed anything to cause us to differ from his conclusion.

It is well settled that either party to a contract may be permitted to correct any error in the instrument purporting to evidence the contract so as to make it express truly and correctly the intention of the parties. Fair v. Williams, 187 La. 953, 175 So. 631.

On March 25, 1937, the defendants deposited $751.96 in the Evangeline Bank and Trust Company, agent of both parties, together with a letter notifying the plaintiff of the selection made in the acreage originally leased. They also authorized the plaintiff in writing to cancel from the records the remaining and unselected acreage as provided for in the lease contract. Up to the time this was done, plaintiff had made no demand or complaint about the non-payment of rentals at the end of six months. Plaintiff refused to accept the money deposited, on the sole ground that the defendants were obligated either to accept or reject the entire acreage under the terms of the lease.

We find no force in plaintiff's contention that defendants caused plaintiff to grant a lease to the Continental Oil Company on terms and conditions materially different from those contained in the option agreement. Defendants, having no control over the Continental Oil Company, can not be held responsible for the contract entered into between plaintiff and that company. At the outset it was agreed between the parties that the Continental Oil Company was to have a preferential right in leasing plaintiff's lands. Great stress is laid by plaintiff on the admission of defendants that they did no geophysical work on the leased property. Plaintiff argues that by this admission defendants

have placed themselves in the position of attempting to enforce a contract which they have violated. Although defendants themselves may have failed to do any geophysical work on the property, the record discloses that the Continental Oil Company did such work. The defendants fully complied with the obligations of the rental contract by paying plaintiff a sum in excess of $5,000 as rental of his property for the period of time stated in the record. An examination of all the provisions of the lease discloses that in default of doing any geophysical work or actual drilling on the leased property, the payment of the agreed rental constituted a strict compliance with the terms of the contract.

For the reasons assigned, the judgment appealed from is affirmed.

PONDER, J., absent.