30 So.2d 182

LINDSEY et al. v. CARAWAY et al.

No. 38308.

March 17, 1947.

Herold, Cousin & Herold, of Shreveport, and Hunt & Guthrie, of Rayville, for plaintiffs-appellants.

Tucker, Bronson & Martin and Blanchard, Goldstein, Walker & O'Quin, all of Shreveport, for defendants-appellees.

PONDER, Justice.

The plaintiffs have appealed from a judgment of the district court sustaining an exception of no cause of action and dismissing their suit.

The plaintiffs, Grady A. Lindsey and A. L. Waller, brought suit against A. R. Wherritt and his transferees, seeking to cancel an instrument dated September 12, 1945, wherein the plaintiffs transferred to A. R. Wherritt a mineral lease on a certain tract of land for a cash consideration of $10,904, and the reservation of a 1⁄16th overriding royalty to each of the plaintiffs, and, in the alternative, for the reformation of the instrument to comply with the agreement of the parties.

It appears from the petition and the exhibits attached thereto that the plaintiffs and the defendant Wherritt were not certain as to the extent of the plaintiffs' title to the leasehold estate. On August 14, 1945, the plaintiffs and Wherritt entered into an agreement by authentic act whereby the plaintiffs, declaring themselves to be the owners of a certain oil, gas and mineral lease covering some thirty-eight acres of land in Richland Parish, Louisiana, agreed to assign the lease to Wherritt. It was agreed therein that the transfer or assignment of the lease was to be with full warranty of title, etc., and that one-eighth of seven-eighths of the oil, gas and other minerals produced from the leased premises was to be reserved in the proportion of 1⁄16th to each of the plaintiffs. It was further agreed that if the plaintiffs' attorney found the title to be the full undivided mineral interest in the leasehold estate, the overriding royalty reserved was to be 1⁄16th of 7⁄8ths to each of the plaintiffs; and if the attorney found that the plaintiffs' title covered less than the full undivided mineral interest, in that event the royalty reserved was to be 1⁄16th of 7⁄8ths to each of the plaintiffs of the portion of the undivided mineral interest in the property actually covered by the lease. It is set out in the agreement that Wherritt was to pay $400 per acre for the interest approved by plaintiffs' attorney, and that $11,200 was to be placed in escrow to cover the cash consideration of the lease. The escrow agent joined in the agreement.

There is a copy of a sale and assignment, executed on September 12, 1945, attached to the petition wherein the plaintiffs, for a cash consideration of $10,904, transferred to A. R. Wherritt the lease, reserving to each of the plaintiffs 1⁄16th of 7⁄8ths of the royalty from any production under the

lease. It is stated in the transfer that the assignment is made with full warranty of title, etc.; but without limiting the generality of the warranty if the lease covered and affected less than the full undivided mineral interest in and to the property or any portion thereof, then and in that event the overriding royalty was to be reduced as to such portion of the property or all of the property, as the case may be, to $\frac{1}{16}$th of $\frac{7}{8}$ths of the fraction representing the proportion of mineral interest in the property or any portion thereof.

This transfer contains the following stipulation, viz.: "Provided, that if said lease covers and affects less than the full undivided mineral interest in the above described property, or any portion thereof, and if in that event the aggregate mineral interest in said property covered by said lease, expressed in mineral acres (calculated by applying the proportion of mineral interest in the property covered by the lease to the acreage involved) is less than 27.26 full mineral acres, then and in that event the overriding royalties reserved herein shall be reduced (equally as between Assignors) to fractions, the aggregate of both of which when subtracted from $\frac{7}{8}$ leaves a fraction which when multiplied by the full number of mineral acres covered by the lease, as calculated above, equals $\frac{66787}{3200}$."

From the allegation in plaintiffs' petition and the attached instrument, it appears that the transfer of the lease did not comply with the original agreement between the parties executed on the 14th day of August, 1945. From the allegations in plaintiffs' petition, the attorney for the defendants was instructed to prepare the act of transfer in conformity with the original agreement, and the stipulation above referred to, commencing with the word "Provided", was placed in the instrument by the defendants' attorney without any suggestion on the part of any of the parties to the contract and without any authority whatsoever.

■■ We have carefully examined the plaintiffs' petition and do not find any allegation of fraud or any statements of fact alleged therein from which fraud can be reasonably inferred. Counsel for the plaintiffs undoubtedly recognize the insufficiency of the allegations of the petition insofar as fraud is concerned for they contend in their brief that, a mistake mutual to both of the parties having been made to the apparent advantage of one now seeking to hold such advantage, with the knowledge that it resulted from a mutual error, such action on their part amounts to fraud. The nature of a suit is determined by the facts stated in the petition and the intention of the petitioner in stating the facts. Since plaintiffs have not specifically alleged fraud, and the facts alleged in the petition cannot justify the inference of fraud, the petition does not disclose a cause of action that would entitle the plaintiffs to the cancellation of the instrument transferring the

lease to the defendants. Harris v. United Gas Public Service Co., 181 La. 983, 160 So. 785.

 From a reading of the petition and the exhibits attached thereto, it appears that the lower court was in error in sustaining the exception of no cause of action as to the plaintiffs' prayer for reformation of the instrument. The petition alleges that the transfer was to be made in compliance with the original agreement, and a comparison of the instruments shows that the stipulation beginning with the word "Provided" was not contained in the original agreement. In the case of Tate v. Ludeau, 195 La. 954, 197 So. 612, we affirmed a judgment of the lower court ordering the reformation of a lease to conform to the agreement of the parties expressed in a previous option agreement. We stated therein that the evidence clearly led to the conclusion that no event or circumstance intervened and no discussion or conversation between the parties arose between the date of the execution of the option agreement and the execution of the lease from which we could reasonably infer that the parties had changed their mind or had any intention to change or modify the lease contemplated by the option agreement. Certainly there is nothing in the petition in the present case or the exhibits attached thereto to show any change of conditions or that the parties contemplated any change in their agreement. In fact, the allegations of the petition are to the effect that the transfer was to be made in conformity with the original agreement. It appears that the Tate case is decisive of the issues here presented. The allegations of the plaintiff's petition are sufficient to support an action for the reformation of the instrument to comply with the agreement of the parties.

For the reasons assigned the judgment of the lower court sustaining the exception of no cause of action is reversed and set aside insofar as it affects plaintiffs' suit seeking the reformation of the instrument, and the case is remanded to the lower court to be proceeded with in accordance with the views herein expressed; cost of this appeal to be paid by the defendants and all other costs to await the final determination of the cause.