**NOT DESIGNATED FOR PUBLICATION**

**STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT**

**2022 CA 0071**

LAW OFFICES OF ROBERT C. LEHMAN, A PROFESSIONAL LAW CORPORATION, LAW OFFICES OF ROBERT C. LEHMAN, LLC and ROBERT C. LEHMAN, INDIVIDUALLY

VERSUS

SHAWN W. ROGERS, ROGERS LAW FIRM, LLC d/b/a ROGERS LAW FIRM, NORMAN J. MANTON, JR., and LOUISIANA CITIZENS PROPERTY INSURANCE COMPANY

Judgment Rendered: **NOV 3 0 2022**

\* \* \* \* \* \*

On Appeal from the Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket No. 2016-13377

Honorable Vincent J. Lobello, Judge Presiding

\* \* \* \* \* \*

Robert C. Lehman
Mandeville, Louisiana

Michael E. Holoway
Folsom, Louisiana

James H. Gibson
Michael O. Adley
Lafayette, Louisiana

Darrin A. Patin
Charles G. Clayton, IV
Metairie, Louisiana

David S. Daly
Elliot M. Lonker
John W. Waters, Jr.
New Orleans, Louisiana

Stacy R. Palowsky
Madisonville, Louisiana
and
F. Timothy Garlick
Bush, Louisiana

In Proper Person

Counsel for Plaintiffs/Appellants
Robert C. Lehman and Law Offices of Robert C. Lehman

Counsel for Defendants/Appellees
Shawn W. Rogers, Rogers Law Firm, LLC d/b/a Rogers Law Firm

Counsel for Defendant
Louisiana Citizens Property Insurance Company

Counsel for Defendant
David E. Walle

Counsel for Defendant
Norman J. Manton, Jr.

\* \* \* \* \* \*

**BEFORE: McDONALD, McCLENDON, AND HOLDRIDGE, JJ.**

**McCLENDON, J.**

Plaintiff appeals the trial court's judgment granting summary judgment in favor of defendant and dismissing plaintiff's claims against defendant. For the reasons that follow, we reverse in part, amend in part, and affirm as amended. We also deny a motion to strike as moot.

## FACTS AND PROCEDURAL HISTORY[1]

On August 12, 2016, Attorney Robert C. Lehman[2] filed this lawsuit against Norman J. Manton, Jr., Louisiana Citizens Property Insurance Company (Citizens), and Shawn W. Rogers and Rogers Law Firm (collectively, "Rogers"). In Lehman's original petition, he alleged that he was engaged by Manton to pursue claims against Citizens, Manton's homeowner's insurer, for damages incurred to Manton's home in 2006 and 2007.[3] Lehman filed two separate lawsuits on Manton's behalf against Citizens in 2007 and 2008 in the 22nd Judicial District Court for the Parish of St. Tammany. On August 5, 2008, Lehman received three checks from Citizens totaling $64,953.18 for damages to the Manton home in connection with the first Manton lawsuit. He also received three checks from Citizens totaling $228,510.65 for damages to the Manton home in connection with the second Manton lawsuit (collectively, the 2008 payments). On all six checks, Lehman was named as an additional payee. Lehman endorsed all six checks and tendered them to Manton, who negotiated the checks. However, Manton never paid Lehman legal fees for his work in obtaining the funds received from Citizens.

---

[1] We borrow certain facts and procedural history from this Court's prior opinions in this matter, **Law Offices of Robert C. Lehman, et al. v. Shawn W. Rogers, et al.**, 2021-0682 (La.App. 1 Cir. 12/22/21), 340 So.3d 917, ("**Lehman I**") and **Law Offices of Robert C. Lehman, et al. v. Shawn W. Rogers, et al.**, 2021-0681 (La.App. 1 Cir. 3/3/22), 2022 WL 620973 (unpublished) ("**Lehman II**").

[2] Lehman filed suit in his individual capacity, on behalf of the Law Offices of Robert C. Lehman, A Professional Law Corporation, and on behalf of the Law Offices of Robert C. Lehman, LLC. For ease of reading, the Plaintiffs are referenced herein collectively as "Lehman."

[3] It is unclear exactly how Lehman came to represent Manton. Before Lehman filed suit on Manton's behalf, Manton retained Carr & Associates, Inc. (Carr & Associates), a public adjusting business, to adjust his claims against Citizens. According to Manton, when he contracted with Carr & Associates, he believed Carr & Associates was his attorney/law firm or that Lehman was Carr & Associates' in-house counsel. Presumably, the belief that Lehman was Carr & Associates' in-house counsel arose from the fact that Lehman worked out of Carr & Associates' office at that time. In contrast, Lehman contends in his original petition that he was contractually engaged by Manton to provide legal services in connection with the Manton lawsuits. However, Lehman gave deposition testimony that he did not have Manton sign a contingency fee contract when he disbursed the 2008 payments to Manton because "[his] belief was that there was a contingency fee contract already signed," but he also specifically testified that no contingency fee contract was signed for the second Manton lawsuit. As Rogers offered only select portions of Lehman's deposition testimony in connection with the motion for summary judgment, we are unable to summarize Lehman's full explanation of the issue.

2

Thereafter, Citizens attempted to have both of the Manton lawsuits dismissed on the basis that the 2008 payments were made in full settlement of Manton's claims. Lehman opposed the motion and obtained rulings in both cases that the 2008 payments by Citizens were not in full settlement of the two Manton lawsuits, but were only tendered in satisfaction of the undisputed portion of the damages. Thereafter, Lehman obtained a judgment against Citizens in the second Manton lawsuit for statutory damages in the amount of $116,342.47, plus attorney fees and costs, with the amount of the attorney fees and costs to be determined after a hearing. Citizens sent Lehman a check for $116,342.47, which proceeds were placed in Lehman's IOLTA trust account.

Lehman alleged that about one month after he deposited the statutory damage check in his trust account, he was contacted by Rogers, and the two men held a meeting on August 12, 2015. During the meeting, Rogers informed Lehman that he represented Manton on an unrelated matter and had been advised by Manton that Lehman had stolen $375,000.00 from him by keeping all of the funds Citizens tendered in payment for damages to the Manton home. Lehman alleged that, "between Rogers' continuing accusations and threats of criminal prosecution, prison[,] and disbarment," Lehman explained to Rogers that Manton had received all of the insurance money, that Lehman had not received any legal fees or even been reimbursed for costs advanced, and that additional monies had been awarded and deposited into Lehman's trust account. Lehman provided Rogers with copies of the clerk of court's records and pointed out that the recipient of the original payments could easily be determined by reviewing the backs of the checks. Lehman alleged that the meeting "concluded amicably," with Lehman and Rogers in agreement that they would "obtain copies of the checks to establish who had actually received the insurance proceeds[.]" Lehman further maintained that he and Rogers agreed "that Lehman would continue to litigate all of the remaining claims in each case provided that Lehman's account of events was shown to be correct."

Nevertheless, "[l]ater that same evening," Rogers contacted Lehman and informed him that if the $116,342.47 payment from Citizens was not immediately transferred to Rogers' trust account, criminal charges would be pursued "regarding

3

Lehman's theft of Manton's money." Lehman alleged that he attempted to "terminate the further spreading of accusations of theft and to avoid the threat of arrest" by proposing that Rogers hold half of the funds, but Rogers said "it was all or nothing[.]" Lehman alleged that "in response to the threat of more false criminal accusations being spread and potential arrest," he agreed "to transfer the funds to Rogers' trust account with an agreement that no funds would be released without mutual consent or a court order." Lehman alleged that he delivered a check from his trust account to Rogers for the full amount of $116,342.47 and, that same evening, provided Rogers with "copies of the checks establishing that the original funds had been deposited into Manton's business account." Lehman maintained that Rogers assured him he would "diligently research the matter, expressing hope that a positive resolution was going to be reached."

Nevertheless, four days later, Rogers called Lehman requesting approval to release the funds, and informed Lehman that if he did not agree, Rogers knew of "at least three judges who already indicated that they would immediately sign a court order allowing Rogers to do so[.]" Lehman alleged that Rogers again claimed "that Lehman's commission of felony theft could result in jail and that Rogers would obtain a court order if Lehman did not provide written approval for the release of funds within twenty minutes." Thus, "while under duress," Lehman "capitulated to Rogers['] demands" that he authorize the release of the funds to Manton.

Subsequently, Lehman "provided additional file correspondence and numerous other documents[,]" which Lehman alleged "clearly confirmed that Rogers had unjustly accused Lehman[,]" and further established that despite not receiving payment for services already rendered in the Manton lawsuits, "Lehman had actually persevered on Manton's behalf in pursuing all the remaining claims so they would not be declared abandoned." Based on Rogers' representation to Lehman that "upon being shown that Lehman's accounts of events was proven to be true[,]" Lehman "would continue to litigate all of the remaining claims in each case[,]" Lehman believed that he "remained as sole counsel of record for Manton on both cases and continued to bear the sole responsibility for their prosecution." Accordingly, in order to avoid abandonment of the

4

first Manton lawsuit, Lehman filed a motion for summary judgment on July 5, 2016, seeking statutory damages. Lehman provided opposing counsel with a copy of the pleadings.

The following morning, Rogers called Lehman, "and to Lehman's astonishment," demanded to know why Lehman was filing a pleading in a closed case in which Lehman was not the attorney. Lehman alleged that, in response to questions he posed, Rogers stated that he "had enrolled as attorney for Manton in both cases without notifying Lehman or serving Lehman with a copy of Roger[s'] motion to enroll[.]" Rogers also informed Lehman that he had waived the majority of the remaining claims, including all attorney fees and costs in both cases, and settled both cases "to placate Manton by getting him quick money so that Manton would not pursue criminal allegations against Lehman." Both cases had been dismissed with prejudice.

Thus, Lehman alleged that "[t]hrough an orchestrated means of overt and covert actions" by Rogers, Citizens, and Manton (collectively sometimes, "defendants"), "Rogers enrolled as counsel in each of the cases, settled each of the cases, and was able to dismiss both cases with prejudice, all without Lehman's knowledge." Lehman contended that defendants' actions "precluded [him] from receiving the [attorney fees] and costs for which a judgment had already been rendered in [the second Manton lawsuit]" and "prevented [him] from receiving the [attorney fees] and costs to be paid by [Citizens] pursuant to a motion for summary judgment filed by Lehman in [the first Manton lawsuit]." Further, Lehman asserted that defendants' actions precluded Lehman from receiving attorney fees and costs pursuant to the judgments in the Manton lawsuits and "caused Lehman to suffer severe distress, anguish[,] and anxiety which is a foreseeable consequence of the defendants' actions." Lehman then prayed for compensation for these damages.

Lehman amended his original petition twice. In Lehman's first amended petition, he named Citizen's attorney in the Manton litigation, David Walle, as an additional defendant, and accordingly, amended his allegations to include Walle. In Lehman's second amended petition, Lehman expanded his allegations to include language specifically claiming that the actions of the defendants were intended to, calculated to,

5

and substantially certain to prevent Lehman from receiving the attorney fees and costs he was entitled to in association with the Manton lawsuits, and to cause Lehman to suffer the foreseeable consequences of severe emotional distress, anguish, and anxiety.

Citizens and Walle each filed a motion for summary judgment. The trial court granted both motions and dismissed Lehman's claims against Citizens and Walle. Lehman appealed both judgments. This Court affirmed the trial court's judgment granting Walle's motion for summary judgment in **Lehman I**, 340 So.3d 917. The **Lehman I** court stressed that the evidence submitted on summary judgment "indicate[d] that Lehman only had a contractual obligation with Manton; therefore, Walle, as opposing counsel, had no duty of any kind to protect Lehman's entitlement to [attorney fees.]" **Lehman I**, 340 So.3d at 921. This Court affirmed the trial court's judgment granting Citizens' motion for summary judgment in **Lehman II**, 2022 WL 620973 (unpublished) ("**Lehman II**") on March 3, 2022. The **Lehman II** court concluded:

> [T]here is no legal or factual support for Lehman's assertion that Citizens, a third-party, owed Lehman a legal duty to take affirmative steps to protect Lehman's right to recover [attorney fees] from Manton so as to impose liability on Citizen's part under general fault principles. Moreover, the purpose of [LSA-]R.S. 37:218 is to protect an attorney's right to collect his earned [attorney fees] and costs. Lehman failed to adhere to the requirements of [LSA-]R.S. 37:218, which would have protected his rights.

**Lehman II**, 2022 WL 620973, *5.

Giving rise to the instant appeal, Rogers filed a motion for summary judgment on March 22, 2021, seeking dismissal of Lehman's claims for the same reason that Lehman's claims against Walle were dismissed: because Rogers had no legal duty to safeguard Lehman's attorney fees interest. Rogers filed six exhibits in support of his motion. Rogers' Exhibit 1 was properly excluded from consideration of the motion for summary judgment, as discussed further below. Rogers' Exhibit 2 was composed of excerpts from Manton's deposition, and contained Manton's testimony that he believed Carr & Associates was his attorney/law firm at the time he contracted with them to adjust his claim. Rogers' Exhibits 3, 4, and 5, were excerpts from days 1, 2, and 3 of Lehman's deposition, respectively, together with exhibits attached thereto. Rogers' Exhibit 6 was Lehman's original petition for damages.

6

In opposition to Rogers' motion for summary judgment, Lehman filed two memoranda on July 14, 2021: an "Initial Memorandum in Opposition to Motion for Summary Judgment Plead By [Rogers] Requesting Order to Strike Movers' Exhibit 1," (initial opposition) and a "Supplement[al] Memorandum in Opposition to Motion for Summary Judgment Plead By [Rogers]" (supplemental opposition). Lehman's initial opposition contained Lehman's objection to Rogers' Exhibit 1 and referenced attached select exhibits. Lehman did not submit exhibits in support of his supplemental opposition, but rather, asserted that Lehman's "previously filed memoranda in opposition to the motions for summary judgment brought by [Citizens] and [Walle]," including the complete transcript of Lehman's deposition and a previously filed sworn affidavit of undisputed material facts, "[were] incorporated into and made a part" thereof. Lehman's supplemental opposition further contended that summary judgment was premature because adequate discovery had not been permitted. Finally, Lehman's supplemental opposition argued that he had successfully pled a cause of action in tort against Rogers for damages caused by Rogers' intentionally harmful actions, and that numerous excerpts of his deposition testimony provided sufficient evidence to satisfy the elements of the causes of action pled.

On July 29, 2021, Rogers filed a reply memorandum in support of his motion for summary judgment, objecting to Lehman's initial opposition and supplemental opposition on the basis that they were procedurally defective under LSA-C.C.P. art. 966. Rogers argued that Lehman's initial opposition was effectively an impermissible motion to strike. Rogers further argued that certain exhibits submitted with the initial opposition were not competent summary judgment evidence and that others were not relevant. Regarding the supplemental opposition, Rogers asserted both that LSA-C.C.P. art. 966 did not permit Lehman to incorporate portions of the record by reference and that LSA-C.C.P. art. 966 did not permit the filing of the supplemental opposition itself.

On August 2, 2021, the day before the summary judgment hearing, Lehman filed a document titled "Provision of Duplicate Hard Copy of Documents Which Have Been Incorporated Into and Made a Part of Opposition Memorandum" (provision of duplicate hard copy) in which he asserted that the following items had already been incorporated

7

into, included in, and made a part of his opposition memorandum: Lehman's memorandum in opposition to Citizens' motion for summary judgment; Lehman's memorandum in opposition to Walle's motion for summary judgment; the complete transcript of Lehman's deposition; and Lehman's list of undisputed facts filed in response to Walle's motion for summary judgment, submitted by sworn affidavit together with exhibits. Lehman stated that each of the four items had been previously filed with the Clerk of Court and filed into and made a part of the record in this litigation. He filed duplicate hard copies of the items with provision of duplicate hard copy.

Rogers' motion for summary judgment came for hearing on August 3, 2021. The trial court agreed with the parties' arguments regarding the admissibility of the exhibits Lehman submitted with his initial opposition, admitting those that were verified and excluding those that were not. Specifically, Lehman's Exhibits A-1, A-2, B-1 through B-5, and C-1 through C-4 are not verified, and therefore not proper summary judgment evidence. **Nettle v. Nettle**, 2015-1875 (La.App. 1 Cir. 9/16/16), 212 So.3d 1180, 1183, writ denied, 2016-1846 (La. 10/16/16), 212 So.3d 1170. Lehman's Exhibits C-5 through C-6 and E-E11 were excerpts of Manton's deposition testimony and therefore proper summary judgment evidence. LSA-C.C.P. art. 966(A)(4). Lehman's Exhibits D-1 and D-2 were submitted in support of Lehman's objection to Rogers' Exhibit 1, which the trial court properly granted at the summary judgment hearing.[4]

---

[4] Rogers' Exhibit 1 is a petition for declaratory judgment and damages that Manton filed in Orleans Civil District Court against Lehman, Earl T. Carr, Jr., Carr & Associates, and several other defendants (CDC suit), together with a copy of this Court's opinion in **Louisiana State Bar Association v. Carr and Associates, Inc.**, 2008-2114 (La.App. 1 Cir. 5/8/09), 15 So.3d 158, writ denied, 2009-1627 (La. 10/30/09), 21 So.3d 292 (**LSBA v. Carr**). In **LSBA v. Carr**, the trial court found that Earl T. Carr, Jr. and Carr & Associates (collectively, "Carr") had engaged in the unauthorized practice of law. **LSBA v. Carr**, 15 So.3d at 163-64. The trial court granted permanent injunctive relief in favor of the LSBA and against Carr. This Court affirmed on appeal. Manton referenced **LSBA v. Carr** in the CDC suit and alleged that Lehman was involved in Carr's offenses.

In this matter, Lehman objected to Rogers' Exhibit 1 on the basis that it was irrelevant and unfairly prejudicial. In support of his position, Lehman submitted his own affidavit as Lehman's Exhibit D-1, and a certified copy of a judgment and order of dismissal, submitted as Lehman's Exhibit D-2, that confirmed the CDC suit had been abandoned and dismissed. In response, Rogers argued that the CDC suit was a pleading and therefore was admissible on summary judgment. Rogers further asserted that the CDC suit was relevant because it "help[ed] provide background for why these events took place." After considering the arguments and record before us, we find that the trial court did not abuse its discretion in refusing to consider Rogers' Exhibit 1 in deciding the summary judgment. Lehman properly objected to Rogers' Exhibit 1 in his initial opposition to the motion for summary judgment, and even if the CDC suit was relevant, it would be more prejudicial than probative, especially given that it was dismissed as abandoned. Thus, the trial court did not err in declining to consider Rogers' Exhibit 1. See LSA-C.C.P. art. 966(D)(2).

8

With respect to Rogers' objection to Lehman's oppositions and request that one of Lehman's oppositions "be stricken," the trial court stated that it was "going to take the first one and interpret that . . . as an objection to the exhibits." The trial court also overruled Rogers' objection to Lehman's request to incorporate portions of the record by reference and Rogers' objection to Lehman's "provision of duplicate hard copy," stating, "For purposes of keeping this record clear and housekeeping, I am going to allow all of these exhibits."[5]

At the conclusion of the hearing of Rogers' motion for summary judgment, the trial court granted Rogers' motion. A written judgment that granted Rogers' motion and dismissed "all" of Lehman's claims against Rogers was executed on August 20, 2021. Lehman appealed.[6]

On appeal, Lehman maintains: that the trial court erred in determining that Rogers satisfied the burden of proof as required by LSA-C.C.P. art. 966; that the trial court erred in failing to recognize Lehman's valid causes of action and that sufficient factual evidence exists to try the case; and that the trial court erred in denying Lehman an opportunity for adequate discovery prior to hearing Rogers' motion for summary judgment. Having conducted a thorough *de novo* review of the record before us, and for the reasons detailed below, we reverse in part, amend in part, and affirm as amended, finding: the trial court properly granted Rogers' motion seeking summary judgment on the theory that Rogers did not owe Lehman a legal duty to protect

---

On appeal, Lehman filed a motion seeking to strike Rogers' Exhibit 1 from the record because it was not considered by the trial court in rendering its ruling on the underlying summary judgment. The motion to strike was referred to the merits. Although we have determined that Rogers' Exhibit 1 was properly excluded from consideration on the motion for summary judgment, there is a distinction between whether a document is part of the record on appeal and whether a document is considered in the determination of the merits of the motion for summary judgment. Because Rogers' Exhibit 1 was filed into the trial court record, it is properly part of the record on appeal; however, because the trial court did not err in excluding it, we do not consider it when conducting our *de novo* review of the motion for summary judgment. Thus, we deny the motion to strike as moot.

[5] Louisiana Code of Civil Procedure article 966(B)(2) expressly states, "[a]ny opposition to the motion [for summary judgment] and all documents in support of the opposition shall be filed and served in accordance with Article 1313 not less than fifteen days prior to the hearing on the motion." The deadline established in LSA-C.C.P. art. 966(B)(2) is mandatory, and the trial court has no discretion to extend the time by which a party must file an opposition. **Auricchio v. Harriston**, 2020-01167 (La. 10/10/21), 332 So.3d 660, 663. Thus, Lehman's provision of duplicate hard copy, which was filed on the day before the summary judgment hearing, was untimely, and is not considered on our *de novo* review herein.

[6] On February 2, 2022, Lehman filed a "Motion for Consent to Utilize Contents of Prior Appellate Records Lodged in this Matter," seeking to use the prior appellate records from **Lehman I**, 2021 CA 0682, and **Lehman II**, 2021 CA 0681, in this appeal. On March 7, 2022, this Court issued an order granting Lehman's motion.

9

Lehman's attorney fees; the trial court erred in dismissing all of Lehman's claims against Rogers, because Lehman's remaining claims against Rogers are much broader in scope than the narrow issue of whether Rogers owed Lehman a legal duty to protect his attorney fees; and, the trial court did not err in denying Lehman an opportunity for adequate discovery prior to hearing Rogers' motion for summary judgment.

## LAW

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **Crosstex Energy Services, LP v. Texas Brine Co., LLC**, 2017-0895 (La.App. 1 Cir. 12/21/17), 240 So.3d 932, 935, writ denied, 2018-0145 (La. 3/23/18), 238 So.3d 963. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties. LSA-C.C.P. art. 966(E). However, a summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. LSA-C.C.P. art. 966(F).

The burden of proof is on the mover. LSA-C.C.P. art. 966(D)(1). The mover may meet this burden by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, stipulations, and admissions with the motion for summary judgment. LSA-C.C.P. art. 966(A)(4). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be negated; rather, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. LSA-C.C.P. art. 966(D)(1). If, however, the mover fails in his burden to show an absence of factual support for one or more of the elements of the adverse

10

party's claim, the burden never shifts to the adverse party, and the mover is not entitled to summary judgment. **Durand v. Graham**, 2019-1312 (La.App. 1 Cir. 6/12/20), 306 So.3d 437, 440.

Appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Crosstex Energy Services, LP**, 240 So.3d at 936. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. **Id**. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Id**.

Under Louisiana Civil Code Article 2315, a person may recover damages for injuries caused by a wrongful act of another. The Louisiana Supreme Court has adopted the "traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting on his client's behalf." **Scheffler v. Adams and Reese, L.L.P.**, 2006-1774 (La. 2/22/07), 950 So.2d 641, 652. Thus, the general rule in Louisiana is that a non-client cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation. **Landry v. Base Camp Management, LLC**, 2015-1377 (La.App. 1 Cir. 10/31/16), 206 So.3d 921, 924, writ denied, 2016-2105 (La. 1/13/17), 215 So.3d 248, citing **Penalber v. Blount**, 550 So.2d 577, 581 (La. 1989). The purpose of this rule is to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed a client. **Id**. After all, the attorney's paramount duty is to his client. **Id**. at 924-25. Both the Louisiana Supreme Court and this Court have recognized that a petition must allege facts showing specific malice or an intent to cause direct harm on the part of the attorney in order to state a cause of action against an adversary's attorney. See **Id.**, 206 So.3d at 925, and **Montalvo v. Sondes**, 637 So.2d 127, 130 (La. 1994).

The Louisiana Supreme Court has further extended this rule to co-counsel in **Scheffler**, 950 So.2d 641, holding that, "as a matter of public policy . . . no cause of action will exist between co-counsel based on the theory that co-counsel have a

11

fiduciary duty to protect one another's prospective interests in a fee." **Scheffler**, 950 So.2d at 653. The Supreme Court further wrote:

> [W]e conclude that it is fundamental to the attorney-client relationship that an attorney have an undivided loyalty to his or her client. This duty should not be diluted by a fiduciary duty owed to some other person, such as co-counsel, to protect that person's interest in a prospective fee.

**Sheffler**, 950 So.2d at 652 (emphasis added). In a well-reasoned opinion relying on **Scheffler**, the Third Circuit in **Tolliver v. Broussard**, 2014-738 (La.App. 3 Cir. 12/10/14), 155 So.3d 137, 145, writ denied, 2015-0212 (La. 4/17/15), 168 So.3d 401 likewise found that no cause of action for breach of fiduciary duty exists between predecessor/successor counsel.

Nevertheless, intentionally tortious actions, ostensibly performed for a client's benefit, will not shroud an attorney with immunity. **Penalber v. Blount**, 550 So.2d 577, 582 (La. 1989). Consequently, even though an attorney does not generally owe a legal duty to his client's adversary, his co-counsel, or his predecessor/successor counsel, under the broad ambit of LSA-C.C. art. 2315, an attorney may be held personally accountable for his intentional tortious conduct. **Id**. Thus, although Rogers did not owe Lehman a legal duty to protect Lehman's attorney fees, the law still recognizes accountability to a non-client, for intentional tortious conduct. See **Id**.

## DISCUSSION

As set forth above, Rogers' motion for summary judgment sought dismissal of all of Lehman's claims against him, based on the assertion that he did not owe Lehman a legal duty to safeguard Lehman's attorney fees. In opposition, Lehman argues that the scope of his claims and theories of recovery exceeded the narrow issue placed before the trial court by Rogers' motion for summary judgment, and thus, summary judgment on the issue of whether Rogers owed Lehman a legal duty to protect Lehman's attorney fees did not dispose of all of Lehman's claims against Rogers.

In accordance with LSA-C.C.P. art. 966(D), as mover, Rogers bore the initial burden of proof in his motion for summary judgment. However, because Rogers would not bear the burden of proof at trial, Rogers' burden was "to point out to the court the absence of factual support for one or more elements essential" to Lehman's claims. See

12

LSA-C.C.P. art. 966(D)(1); **Ellis v. Quiett**, 2019-0065 (La. 3/25/19), 266 So.3d 887, 888 (per curiam).

Our review confirms that Rogers successfully established that he did not owe Lehman a legal duty to safeguard Lehman's attorney fees. As noted above, Rogers' Exhibits 3, 4, and 5 were excerpts from days 1, 2, and 3 of Lehman's deposition, respectively, together with exhibits attached thereto. Rogers pointed out that these excerpts contained Lehman's testimony that Lehman recognized that Rogers did not owe him a legal duty to safeguard his attorney fees or a fiduciary duty; that Lehman waived his legal fees for the first Manton lawsuit; that Lehman did not obtain a signed contingency fee contract for the second Manton lawsuit; and, that Lehman acknowledged that Louisiana law requires an attorney to file a fee contract in the public record in order to secure an attorney fees privilege and impose liability on third parties.. Further, although disputed facts preclude us from definitively determining whether Lehman and Rogers were co-counsel or predecessor/successor counsel, given the rule that an attorney acting on his client's behalf does not owe a legal or fiduciary duty to his co-counsel or his predecessor/successor counsel, the distinction would be one without a difference in this matter. See **Scheffler**, 950 So.2d at 652, and **Tolliver**, 155 So.3d at 145. Thus, it is undisputed that Rogers did not owe Lehman a legal duty to safeguard his attorney fees.

Nevertheless, the finding that Rogers did not owe Lehman a duty to safeguard Lehman's attorney fees was not determinative of "all" of Lehman's claims against Rogers. To the contrary, Lehman's verified original petition, verified first amended petition, and verified second amended petition establish that Lehman's claims against Rogers are broader in scope than the narrow issue of whether Rogers' owed Lehman a legal duty.[7] In particular, Paragraph 36 alleges:

---

[7] To the extent that it may be argued that Lehman's first and second amended petitions were not submitted as exhibits in support of the motion for summary judgment, we borrow the following from our brethren at the Fourth Circuit Court of Appeal:

> While summary judgment may be rendered only on those issues set forth in the motion under consideration pursuant to La. C.C.P. art. 966(F), the motion itself does not dictate the nature of a petitioner's claim or the theory of recovery upon which a petitioner seeks redress. . . . We know of no statute or case law by which an *argument* raised in a summary judgment motion determines the nature of a petitioner's claim. Rather, the "nature of a claim is determined by the pleadings in the case." **Cacamo v. Liberty Mut.**

13

The overt and covert actions of the defendants (including without limitation, coercion, intimidation, and threats by Rogers and by Manton to disparage Lehman by alleging unethical and unlawful acts) were intended to, calculated to, and substantially certain to cause Lehman to suffer severe emotional distress, anguish and anxiety which is the foreseeable consequence of the defendants' actions.

Thus, Lehman has alleged specific facts, which if proven, could meet the requirements set forth by the Louisiana Supreme Court in **Montalvo**, 637 So.2d at 130, of specific malice or an intent to cause direct harm on the part of the attorney. See **Landry**, 206 So.3d at 924. Lehman elaborated on his claims against Rogers in his deposition. For example, when asked whether he believed that Rogers had a duty to him to safeguard his attorney fees, Lehman replied:

Stated specifically that way, my answer would have to be negative, but I think that is a tremendous oversimplification of what the totality of the circumstances are here. *If - - if something is done which has been done deliberately and where there's a certainty of causing someone else damages, then there is a liability which imposes on them.* R. 513.

(Emphasis added.)

The record before us reflects that Lehman's claims and/or theories of recovery were not limited to the issue of whether Rogers owed Lehman a legal duty for failing to safeguard Lehman's attorney fees. Moreover, while summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, *a summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time.* LSA-C.C.P. art. 966(F) (emphasis added). Rogers' motion for summary judgment explicitly sought dismissal of "all claims against [Rogers]" on the narrow basis that "there is no genuine issue of material fact that Rogers owed no duty to Lehman"; it did not seek dismissal of Lehman's other claims. Consequently, the issue of whether Rogers owed Lehman a duty to protect Lehman's attorney fees was not determinative of all of the claims

---

**Fire Ins. Co.**, 99-3479, p. 6 (La. 6/30/00), 764 So.2d 41, 45 (citing **Jefferson v. Tennant**, 107 So.2d 334 (La. App. 2nd Cir. 1958)). "[B]ecause our civil procedure is based on fact pleading, [*see* La. C.C.P. arts.] 854 and 891, the courts must look to the facts alleged to discover what, if any, relief is available to the parties." **Carter v. Benson Auto. Co.**, 94-158, p. 3 (La.App. 5 Cir. 9/27/94), 643 So.2d 1314, 1315. That is to say, "the [n]ature of a suit is determined by the facts stated in the petition and the intention of the petitioner in stating the facts." **Lindsey v. Caraway**, 211 La. 398, 402, 30 So.2d 182, 183 (1947).

**Balthazar v. Hensley R. Lee Contracting, Inc.**, 2016-0920 (La.App. 4 Cir. 3/15/17), 214 So.3d 1032, 1038-39, writ denied, 2017-0777 (La. 9/22/17), 228 So.3d 741.

Lehman asserted against Rogers, and the trial court erred in dismissing all of Lehman's claims on that basis. Accordingly, we reverse that portion of the August 20, 2021 judgment dismissing "all" of Lehman's claims, amend to provide that the motion for summary judgment is granted in part as to the theory that Rogers did not owe a legal or fiduciary duty to safeguard Lehman's attorney fees, and amend to dismiss only that theory of recovery, as it was the only issue set forth for consideration by the court in Rogers' motion for summary judgment. All other theories of recovery or claims asserted by Lehman remain.

Lehman also contends that the trial court erred in denying him an opportunity for adequate discovery prior to the hearing on the motion for summary judgment. Generally, a motion for summary judgment may be granted after an opportunity for adequate discovery. See LSA-C.C.P. art. 966(A)(3); **Elee v. White**, 2019-1633 (La.App. 1 Cir. 7/24/20), ___ So.3d ____, ____, 2020 WL 4251974, *4, writ denied, 2020-01048 (La. 11/10/20), 303 So.3d 1038. However, there is no absolute right to delay action on a motion for summary judgment until discovery is complete; the law only requires that the parties have a fair opportunity to conduct discovery and present their claims. **Id**. A trial court has wide discretion in the control of its docket, case management, and the determination of whether a continuance should be granted. **Rover Group, Inc. v. Clark**, 2021-1365 (La.App. 1 Cir. 4/8/22), 341 So.3d 842, 846. An appellate court will not disturb such a ruling unless there is a clear showing the trial court abused its discretion. **Id**.

During the summary judgment hearing, the trial court asked Lehman whether he had filed a motion to compel Rogers' deposition. Lehman responded that he had not. The trial court also asked Lehman if he had filed a motion to conduct a Code of Evidence Rule 508 hearing. Lehman explained that he had, but the previous judge continued the hearing without date. The trial court then pointed out that Lehman had not sought to set the Rule 508 hearing in the year-and-a-half that the present judge had been on the bench. After a thorough review of the record before us, we conclude that the trial court did not abuse its discretion in declining to continue the summary

15

judgment hearing on the narrow issue before the court. See **Rover**, 341 So.3d at 846-47.

## CONCLUSION

Having conducted a *de novo* review of the matter before us, we find that the trial court properly granted summary judgment on the single issue set forth in the motion under consideration, *i.e.*, in finding that Rogers did not owe Lehman a duty to safeguard Lehman's attorney fees and dismissing that theory of recovery accordingly. However, as other theories of recovery or claims remain, we find that the trial court erred in dismissing all of Lehman's claims against Rogers. Having so found, we reverse that portion of the judgment that provides that "all claims of Plaintiffs against Defendants . . . are hereby DISMISSED WITH PREJUDICE." Further, we amend that portion of the August 20, 2021 judgment that provides that the motion for summary judgment filed on behalf of Shawn W. Rogers and Rogers Law Firm, LLC, "is hereby GRANTED" to instead provide:

> IT IS ORDERED, ADJUDGED, AND DECREED that the "Motion for Summary Judgment" filed on behalf of Defendants, Shawn W. Rogers and Rogers Law Firm, LLC, is granted in part. Defendants did not owe a legal or fiduciary duty to Plaintiffs, Robert C. Lehman, Law Offices of Robert C. Lehman, A Professional Law Corporation, and Law Offices of Robert C. Lehman, LLC, to protect Plaintiffs' interest in earned or prospective attorney fees. Accordingly, that theory of recovery is dismissed with prejudice. All other claims asserted by Plaintiffs remain.

Further, we affirm as amended. Costs of the appeal are assessed fifty percent to defendants, Shawn W. Rogers and Rogers Law Firm, LLC, and fifty percent to plaintiffs, Robert C. Lehman, Law Offices of Robert C. Lehman, A Professional Law Corporation, and Law Offices of Robert C. Lehman, LLC.

**REVERSED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED. MOTION TO STRIKE DENIED.**

16